UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATHERINE M. CADY, as Personal Representative of the Estate of Paul Victor Galambos III, | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) 2:10-cv-00512-NT ) |
| CUMBERLAND COUNTY JAIL, et al., | ) ) |
| Defendants | ) |

**ORDER ON MOTION TO AMEND**

On August 1, 2012, Plaintiff Katherine Cady requested leave to amend her complaint to introduce a fourth amended complaint. (Mot. to Amend, ECF No. 75.) Cady seeks to amend her pleading to add two new defendants who were working on behalf of Defendant Corizon, Inc. (formerly Correctional Medical Services, or CMS), when some of the incidents underlying this action occurred. Defendants oppose the motion on the grounds of delay, lack of diligence, and prejudice. (Corizon's Objection, ECF No. 79.[1]) The already oft-amended scheduling order established a January 5, 2012, deadline for amendment of the pleadings. (See ECF Nos. 53, 54.) Within the deadline, Plaintiff added fourteen defendants (all associated with Cumberland County Jail, Maine Medical Center, and Maine Medical Partners) and stipulated to the dismissal of one individual defendant (a Corizon employee). (See ECF Nos. 24, 55, 56.) According to Plaintiff, she only recently had the means to discover that she omitted two Corizon employees from the list of defendants. The motion to amend is denied.

---

[1] The Cumberland County Defendants join in the objection, but have not separately briefed the issue. (ECF No. 80.)

**Applicable Legal Standards**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, prior to trial a party may amend his pleading once, as a matter of course at the outset of litigation, but may only amend the pleading further with the opposing party's consent or with leave of court.  Fed. R. Civ. P. 15(a).  When leave of court is called for, the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This standard is not difficult to meet, but it "becomes compounded with a higher standard" after the court's scheduling order deadline for amendment of pleadings and joinder of parties has expired.  El-Hajj v. Fortis Benefits Ins. Co., 156 F. Supp. 2d 27, 34 (D. Me. 2001).  Under Rule 16: "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Rule 16's good cause requirement is designed to ensure that the pleadings become fixed at some point in time.  Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008).  "[L]iberally granting motions to amend the pleadings—filed after a party has disregarded the scheduling order deadline—would effectively 'nullify the purpose of Rule 16(b)(1).'"  O'Connell v. Hyatt Hotels, 357 F.3d 152, 155 (1st Cir. 2004) (quoting Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1155 (1st Cir. 1992)).

The good cause standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  "Prejudice to the opposing party remains relevant but is not the dominant criterion."  O'Connell, 357 F.3d at 155.  "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied[.]"  Steir, 383 F.3d at 12.

**Relevant Factual Allegations, Representations, and Attestations**

Plaintiff alleges that Defendants were deliberately indifferent to a serious medical need that resulted in the death by suicide of the late Paul Galambos while he was a pretrial detainee at

2

the Cumberland County Jail.  Plaintiff's operative Third Amended Complaint (ECF No. 59) states that Galambos died on December 12, 2008, after a series of self-inflicted injuries he suffered over the course of several days, while on suicide watch.  According to Cady, she only recently discovered (1) that Hope Gordon was assigned to duty as a charge nurse for Corizon[2] on the night of December 8, when Galambos took a "swan dive" off a table and onto a concrete floor and (2) that Corizon's Health Services Administrator, Dianne North, approved placing Galambos in a "pro-restraint chair" on December 10.  Cady wishes to add these two individuals to the list of individual defendants exposed to the Section 1983 claim she brings on behalf of the Galambos Estate.

     Cady asserts that she wants to join North as a party defendant because of information Cady acquired from, among other things, answers to interrogatories received April 6, 2012.  Cady also indicates that she deposed North on June 8, 2012, though Cady does not indicate when she noticed this deposition or how it came to pass that she identified North as a proper deponent but not a proper defendant.  (Mot. to Amend at 3-4.)  Cady also states that her decision to include North as a defendant comes after consulting with her "psychiatric expert," who now holds "an updated opinion."  (Id. at 4.)

     As to the joinder of Hope Gordon, Cady asserts that her identity was "established with the production of CMS [now Corizon] shift reports in response to Plaintiff's Request for the Production of Documents."  (Id.)  According to Cady, she had not yet named Gordon as a defendant because she did not learn until late in July that Gordon was the charge nurse on December 8, 2008, and was in a position to respond to the swan dive incident.  (Id.)

---

[2]     Corizon, Inc., is a private entity that has contracted with Cumberland County to provide medical services to jail inmates in the jail environment.

3

On the issue of her diligence, Cady's position is that "attorney scheduling issues precluded most of the critical depositions from taking place between January and May of this year" and that it was "implausible for Plaintiff to seek the current amendment of the complaint within the Court's deadline without the benefit of the information gained through the [July] depositions." (Id. at 5.)  Cady's motion is not supported by any affidavits or other evidence pertaining to the discovery process.

In support of the opposition to the motion, counsel for Corizon attests by affidavit that Corizon provided its responses to Cady's document requests on March 7, 2012, and that several documents indicated that North "had information regarding the policies and procedures at CCJ and that Hope Gordon was the 'Charge Nurse' on the date of Mr. Galambos' 'swan dive.'" (Objection at 3; Saucier Aff., ¶ 5, ECF No. 79-2.)  Otherwise, counsel observes that Cady noticed North's deposition on May 22, 2008, and that Cady sought extensions of the discovery deadline but never requested extensions of the amendment/joinder deadline.  (Objection at 3 & n.4.)

In her reply, as to joining Ms. North as a defendant, Plaintiff represents that the discovery materials provided in March 2012 "did not show that Dianne North had any significant interaction with Galambos or knowledge of his plight during his incarceration" and did not "specifically" identify her as connected to any relevant treatment decision.  (Reply at 2, ¶¶ 1-2, ECF No. 84.)  On the other hand, Cady states that she learned from materials provided in March that CMS [now Corizon] administration was critical of the number of "send outs" for medical treatment, including specifically a send out related to Galambos.  (Id. ¶ 3.)  This sounds, to me, like a supervisory liability theory that connects with North in her capacity as Health Services Administrator.  In fact, this is what prompted Cady to notice North's deposition.  (Id. at 3, ¶¶ 5,

4

8.)  Cady also reveals that "[w]ith receipt of discovery materials in April 2008 [sic] from the Cumberland County Jail, Plaintiff gained more insight into North's involvement as HSA in the overall treatment decisions of Galambos."  (Id. at 3, ¶ 6.)  This added insight included reports stating that North was present in Galambos's cell.  (Id., ¶ 7.)

As to joining Ms. Gordon as a defendant, Cady states that she "tentatively identified [Gordon] by a process of elimination from shift schedules." (Id. at 5, ¶ 13.)  She also states, confusingly, that the "important factor for Plaintiff is not that Gordon was the charge nurse at that particular time" but whether or not a review of the medical records suggested to Cady that Gordon adequately responded to Galambos's medical needs.  (Id. at 5-6, ¶ 14.)

### Discussion

Corizon asserts that Plaintiff has not shown reasonable diligence and that "[a] keen example of such lack of diligence is Plaintiff's delay in issuing written discovery requests until after the pleadings deadline had already passed."  (Id. at 6.)  Corizon also emphasizes that Cady's motion acknowledges an awareness of Gordon and North as early as March 2012.  (Id. at 7.)  Corizon also advances a prejudice argument, noting that Cady is relying in part on an August 2012 supplemental opinion of an expert to support her motion to amend.  Corizon maintains that allowing the amendments would therefore call for further expert depositions and result in additional expense and delay.  (Id. at 8.)  Plaintiff, on the other hand, says that she wanted to make "a grounded judgment about naming Dianne North as a party" (Reply at 4, ¶ 9) and only "tentatively identified" Gordon upon review of Defendants' written discovery responses (id. at 5, ¶ 13).  Plaintiff contends she could not have linked the prospective defendants to the alleged violation(s) without deposition testimony obtained late in July and, as to North, without expert advice that drew on the July deposition testimony.  (Id. at 4-5, ¶¶ 10-11, 14.)

5

The factual picture that emerges from Cady's unsworn representations and defense counsel's sworn statements does not support a finding that Cady was reasonably diligent in her effort to ascertain and name all of the relevant Corizon defendants.  Had Cady brought this motion in March or April a finding of reasonable diligence might have been warranted, though it would still be true that her service of written discovery after the deadline for amending the pleadings and her failure to request an extension of the amendments deadline fell short of a truly diligent approach to the matter.  As it happened, Cady missed the applicable deadline by eight months and only filed her motion at the tail end of an already extended discovery period.  Based on the unsworn representations Cady has made in the course of opposing the motion, I am persuaded that Cady should have recognized that North and Gordon were suitable defendants who fit into Cady's theory of the case no later than April and that the resulting delay and prospective burdens that would arise if the motion were granted at this juncture, including new expert discovery, are not justified by a "good cause" showing.  Even at this late date, this conclusion might have been different if Cady had pointed to a focused written discovery request designed to identify individuals involved in specific aspects of Galambos's care and their supervisors, coupled with a response from Corizon that omitted mention of North and Gordon.  However, Cady has not even presented evidence that her written discovery initiatives were drawn in a "diligent" fashion to ascertain the appropriate defendants.

## Conclusion

Because Cady's good cause presentation is unpersuasive, her motion to amend is DENIED.

*So Ordered.*
September 7, 2012              /s/ Margaret J. Kravchuk
                               U.S. Magistrate Judge